IN THE UNITED STATES DISTRICT COURT
DISTRICT FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| Hexagon Securities LLC, | ) | |
| | ) | |
| Plaintiff, | ) | No.: 3:14-cv-4141 |
| | ) | |
| v. | ) | |
| | ) | **COMPLAINT** |
| Golden Pacific Bancorp, Inc., | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

Plaintiff Hexagon Securities LLC, a Delaware limited liability company, ("Plaintiff" or "Hexagon") by and through its counsel, Elizabeth A. Avedikian, alleges:

**Parties, Jurisdiction, and Venue**

1.  Hexagon is a small investment bank that specializes in capital markets, capital raising, and mergers and acquisition activities with its principal place of business in New York.

2.  Defendant Golden Pacific Bancorp, Inc. ("Defendant or "GPB") is a bank holding company and California corporation headquartered in Sacramento, California.

3.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because complete diversity of citizenship exists between the parties, as shown above, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

4.  Venue is proper in this district is pursuant to a forum selection clause entered into by the parties providing that:

> [GPB and Hexagon] hereby (a) consent to submit to the jurisdiction of the courts of the State of California and of the United States of America

> located in the State of California for any action, suit or proceeding arising out of or relating to this Agreement (and hereby irrevocably and unconditionally agree not to commence any such action, suit, or proceeding except in such courts), [and] (b) waive the defense of an inconvenient forum or venue of any such action, suit or proceeding in any such courts . . . .

*See* Ex. A. § 9.

## Factual Background

*The Placement Agreement*

1. In or around December 20, 2010, GPB and Hexagon entered into an agreement for the provision of financial services (the "Placement Agreement") whereby Hexagon agreed to act as a "Lead Placement Agent" for GPB. In or around March 23, 2011, the parties amended certain provisions of the Agreement. A copy of the Agreement, as amended, is attached hereto as Exhibit A.

2. As Lead Placement Agent, Hexagon promised to assist GPB in the structuring, issuance, sale, arrangement or placement of securities transactions ("Transactions"). Hexagon's services included assisting with preparing marketing materials, working with GPB to prepare information memoranda, coordinating marketing processes and roadshows, and assisting with transaction execution. Placement Agreement § 1.

3. In exchange, GPB agreed to pay Hexagon a monthly administrative fee as well as a six percent Transaction Fee upon the closing of a transaction for all Transactions on which Hexagon was the Lead Placement Agent. *Id*. §§ 4, 5.

4. Specifically, as amended, the Placement Agreement provides as follows with respect to the Transaction Fee:

> [GPB] agrees to pay Hexagon, promptly upon closing of a Transaction, a cash fee (the "Transaction Fee") equal to six percent

>(6.0%) of the aggregate gross proceeds to [GPB] (i.e., the par amount of such Securities). Notwithstanding the foregoing, the Transaction Fee with respect to any Securities sold to shareholders existing as of the date hereof or to the Company's directors or officers will be one percent (1%) of such aggregate gross proceeds to the Company. For purposes of clarity, no Transaction Fee shall be payable with respect to the capital, if any, raised by the Company through The Troubled Asset Relief Program (TARP), Small Business Lending Fund (SBLF) or similar government programs (collectively, "SBLF Capital").

*Id*. § 4(a) (as amended).

5. The initial term of Hexagon's engagement under the Placement Agreement was from the date of the execution of the Placement Agreement until December 31, 2013. The parties agreed that the termination date of the Placement Agreement "may be extended by mutual agreement of the parties." *See id.* § 7.

6. The Placement Agreement also provides for compensation to Hexagon if GPB consummates a transaction after the term of the Agreement that is similar to a Transaction. For these "Tail Period Transactions," the parties agreed:

>If, during the six-month period following the Termination Date of this Agreement, [GPB] consummates a transaction similar in nature to a Transaction with any of the Investors introduced to it by Hexagon (a "Tail Period Transaction"), Hexagon shall be entitled to the Transaction Fee set forth in Section 4 as if such Tail Period Transaction were a "Transaction".

*Id*.

### *The Gapstow Transaction*

7. Beginning in or around June of 2011, pursuant to the Placement Agreement, Hexagon worked as the Lead Placement Agent for a Transaction involving Gapstow Capital Partners ("Gapstow").

8. Hexagon expended significant resources in connection with the Gapstow

Transaction, including assisting with preparing presentations for Gapstow, formulating equity calculations related to value/share structure, and other time-intensive tasks essential to the success of the Transaction.

9. Hexagon is entitled to a 6% Transaction Fee for its work on the Gapstow Transaction upon closing of the Transaction.

10. Although the closing of the Gapstow Transaction has been delayed through no fault of Hexagon's, there is no question that Hexagon was the Lead Placement Agent on the Transaction during the Term of the Placement Agreement.

11. In fact, senior representatives of GPB acknowledged Hexagon's role and entitlement to compensation as late as August 16, 2014.

12. GPB also acknowledged Hexagon's work and role in several communications throughout 2013 and 2014.

13. Indeed, the draft Subscription Agreement by which the Transaction between Hexagon and GPB would be consummated specifically acknowledges Hexagon's entitlement to a fee for its role.

14. On numerous occasions in 2014, GPB requested assistance from Hexagon with respect to the Gapstow Transaction.

15. Hexagon responded to each of these requests diligently.

16. Despite GPB's acknowledgement and the plain language of the Placement Agreement, Virginia Varela, Chief Executive Officer of GPB sent Hexagon a letter dated July 2, 2014 stating that she "believ[ed] that all of Golden Pacific's obligations pursuant to [its agreements with Hexagon] have been satisfied in full and that no fees will be due under either of these agreements in the future."

17. In spite of Varela's July 2, 2014 letter, Gapstow continued to request assistance from Hexagon with respect to the Gapstow transaction as recently as August 14, 2014.

18. Upon information and belief, the Gapstow Transaction is expected to close within the next several days.

19. GPB does not intend to pay Hexagon's fee for its role, despite the fact that Hexagon has been instrumental in making sure the transaction closes.

## FIRST CAUSE OF ACTION
### (Declaratory Judgment – Lead Placement Agreement)

20. Plaintiff incorporates by reference paragraphs 1 through 19, inclusive, as if fully set forth herein.

21. An actual justiciable controversy exists between Hexagon and GPB, and pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, the Court may declare the rights and legal relations of the parties in connection with the Agreement.

22. The Placement Agreement is a valid and enforceable contract.

23. Hexagon performed all of its duties under the Placement Agreement, including serving as Lead Placement Agent with respect to the Gapstow Transaction.

24. Hexagon is entitled to a 6% Transaction Fee upon closing of the Gapstow Transaction.

25. GPB denies that Hexagon is entitled to a Transaction Fee for its services with respect to the Gapstow Transaction.

26. Hexagon is entitled to a declaratory judgment that it is owed a 6% Transaction Fee pursuant to the Placement Agreement for its services with respect to the Gapstow Transaction.

## SECOND CAUSE OF ACTION
### (Unjust Enrichment)

27. Plaintiff incorporates by reference paragraphs 1 through 19, inclusive, as if fully set forth herein.

28. This cause of action for unjust enrichment is pled in the alternative.

29. Hexagon provided valuable placement and advisory services to GPB worth at least $126,000.

30. GPB was enriched by Hexagon's provision of these services.

31. Hexagon incurred great expenses to provide services to GPB.

32. It would be inequitable to permit GPB to retain the benefit of Hexagon's services without compensating Hexagon.

WHEREFORE, Plaintiff requests judgment against Defendant for the following:

1. A declaration that Hexagon is entitled to a 6% Transaction Fee pursuant to the Placement Agreement for its services with respect to the Gapstow Transaction.

2. A monetary judgment in an amount of $126,000.

3. Any other and further relief that the court considers proper.

Respectfully submitted,

Dated: September 12, 2014          AVEDIKIAN LAW OFFICES

_____
Elizabeth A. Avedikian, Esq.
Attorneys for Plaintiff