UNITED STATES DISTRICT COURT

Northern District of California

San Francisco Division

| | |
|---|---|
| HEXAGON SECURITIES LLC,<br><br>    Plaintiff,<br>    v.<br><br>GOLDEN PACIFIC BANCORP, INC.,<br><br>    Defendant.<br>_____/ | No. C 14-04141 LB<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>[Re: ECF No. 14] |

## INTRODUCTION

Plaintiff Hexagon Securities, LLC ("Hexagon") entered into a contract with Defendant Golden Pacific Bancorp, Inc. ("GPB"), which Hexagon now says GPB breached by not paying it a transaction fee with respect to a transaction that closed after the contract terminated. Hexagon sued GPB, and now GPB moves to dismiss Hexagon's First Amended Complaint. Pursuant to Civil Local Rule 7-1(b), the court found this matter suitable for determination without oral argument and vacated the January 15, 2015 hearing. Upon consideration of Hexagon's allegations, the briefs submitted, and the applicable legal authority, the court grants GPB's motion and dismisses without prejudice Hexagon's First Amended Complaint.

## STATEMENT

Hexagon is a small investment bank that specializes in capital markets, capital raising, and

mergers and acquisition activities. First Amended Complaint ("FAC"), ECF No. 11 at 1.[1] GPB is a bank holding company. *Id.* On December 20, 2010, Hexagon and GPB entered into a written agreement (the "Agreement") regarding Hexagon's provision of financial services to GPB. *Id.*; *see id.*, Ex. A, ECF No. 11-1 at 1-11. By written letter, the parties amended certain provisions of the Agreement on March 23, 2011. *Id.*, Ex. A, ECF No. 11-1 at 12-13. The Agreement, as amended, provides in relevant part:

> 1. <u>Services</u>.
>
> [GPB] hereby retains Hexagon and Hexagon shall have the right to act during the term of this Agreement as lead manager, bookrunner, placement agent, arranger or initial purchaser, as the case may be ("Lead Placement Agent"), in connection with the structuring, issuance, sale, arrangement or placement, whether in a public or private transaction, of any equity or hybrid securities, including (without limitation), stock, warrants and convertible debt securities (the "Securities") to investors ("Investors") (any of all of the foregoing, whether in one or more issuances, the "Transaction").
>
> . . .
>
> Hexagon's services as Lead Placement Agent shall include, but not be limited to, the following:
>
> > (a) Assisting with the preparation of any and all marketing materials for discussions with Investors relating to the Transaction, including working with [GPB] on the Information Memorandum;
> >
> > (b) Assisting with the coordination of the marketing process and roadshow with respect to the Transaction;
> >
> > (c) Assisting with the coordination of the execution of the Transaction with [GPB's] and Hexagon's legal counsel.
>
> . . .
>
> 4. <u>Compensation</u>.
>
> (a) [GPB] agrees to pay Hexagon, promptly upon closing of a Transaction, a cash fee (the "Transaction Fee") equal to six percent (6.0%) of the aggregate gross proceeds to [GPB] (i.e., the par amount of such Securities). Notwithstanding the foregoing, the Transaction Fee with respect to any Securities sold to shareholders existing as of the date hereof or to [GPB's] directors or officers will be one percent (1.0%) of such aggregate gross proceeds to [GPB]. For purposes of clarity, no Transaction Fee shall be payable with respect to capital, if any, raised by [GPB] through The Troubled Asset Relief Program (TARP), Small Business Lending Fund (SBLF) or similar government programs (collectively, "SBLF Capital").

---

[1] Record citations are to documents in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

. . .

5. <u>Expenses</u>.

In lieu of reimbursing Hexagon for travel and marketing expenses incurred by Hexagon in connection with the engagement contemplated hereunder, [GPB] shall pay Hexagon a monthly administrative fee during the first six months of this engagement.  This monthly fee shall be based upon a mutually agreed budget described in Appendix B; thereafter, [GPB] will not be responsible for travel and marketing expenses incurred hereunder.  In the event [GPB] elects [to] not complete the Transaction [GPB] will reimburse Hexagon, promptly upon receipt of an invoice therefor, for all reasonable out-of-pocket legal fees and legal expenses incurred by Hexagon which have been agreed to in advance by [GPB] in connection with a Transaction. [GPB] shall not be liable for any of Hexagon's specific outside legal fees or costs should Hexagon elect to not proceed with the Transaction or if Hexagon fails to achieve the minimum capital raise as agreed upon by [GPB] and Hexagon which causes the Transaction to not be closed.

. . .

7. <u>Termination and Break-up Fees</u>.

   The term of Hexagon's engagement hereunder will commence upon the execution of this Agreement by both parties, and will continue until December 31, 2013 (which date may be extended by mutual agreement of the parties) (the "Termination Date"), unless terminated earlier pursuant to the immediate succeeding sentence (the "<u>Termination Date</u>").  Notwithstanding the foregoing, the Termination Date shall be the <u>latest</u> of (a) December 31, 2011 if no Transaction has closed on or prior to such date <u>and</u> [GPB] has not raised SBLF Capital between the date hereof and such date; or (b) March 31, 2012 if no Transaction has closed on or prior to such date <u>and</u> [GPB] has raised SBLF Capital between the date hereof and such date.  Upon termination of this Agreement, [GPB] shall promptly pay Hexagon any accrued but unpaid fees payable hereunder and shall reimburse Hexagon for any unreimbursed expenses that are reimbursable hereunder.  If, during the six month period following the Termination Date of this Agreement, [GPB] consummates a transaction similar in nature to a Transaction with any of the Investors introduced to it by Hexagon (a "Tail Period Transaction"), Hexagon shall be entitled to the Transaction Fee set forth in Section 4 as if such Tail Period Transaction were a "Transaction."  Upon any termination of this Agreement, the rights and obligations of the parties hereunder shall terminate, except for the obligations set forth in Sections 6 [regarding indemnification], 7 [regarding termination and break-up fees], and 9 [regarding the governing law] and Appendix A [regarding indemnification], which shall survive such termination.

   Subject to market conditions, the parties hereto shall use their good faith efforts to close the Transaction in a reasonably expeditious manner.

. . .

9. <u>Governing Law</u>.

   THIS AGREEMENT AND ALL DISPUTES ARISING OUT OF OR RELATING TO THIS AGREEMENT SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK. . . .

> The parties hereto hereby (a) consent to submit to the jurisdiction of the courts of the State of California and of the United States of America located in the State of California for any action, suit or proceeding arising out of or relating to this Agreement (and hereby and irrevocably and unconditionally agree not to commence any such action, suit, or proceeding except in such courts), (b) waive the defense of an inconvenient forum or venue of any such action, suit or proceeding in any such courts, (c) agree to accept service of process by mail and (d) agree that a decision in such jurisdiction will be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.
>
> . . .
>
> 13. <u>Miscellaneous</u>.
>
> This Agreement constitutes the entire agreement between the parties with respect to th subject matter hereof, and may not be amended or modified except in writing signed by each party hereto. . . .

*Id.*, Ex. A, ECF No. 11-1 at 1, 3-4, 12-13, ¶¶ 1, 4(a), 7, 9, 13 (underlining in original); *see also id.*, ECF No. 11 at 2-3.

In its First Amended Complaint, Hexagon alleges that, pursuant to the Agreement, and beginning in or around June 2011, it worked as the Lead Placement Agent for a Transaction involving Gapstow Capital Partners ("Gapstow") (the "Gapstow Transaction"). *Id.*, ECF No. 11 at 3. It says that it expended significant resources in connection with the Gapstow Transaction, including assisting with preparing presentations for Gapstow, formulating equity calculations related to value/share structure, and other time-intensive tasks essential to the success of the Gapstow Transaction. *Id.* at 3-4.

Despite its beginnings in June 2011, the Gapstow Transaction did not close for a few years. Hexagon alleges that GPB acknowledged Hexagon's work and role in several communications throughout 2013 and 2014, and that GPB requested Hexagon's assistance with respect to the Gapstow Transaction on numerous occasions in 2014. *Id.* at 4. Hexagon responded to each request diligently. *Id.* Nevertheless, GPB's Chief Executive Officer, Virginia Varela, sent Hexagon a letter dated July 2, 2014 which stated that she "believ[ed] that all of [GPB's] obligations pursuant to [its agreements with Hexagon] have been satisfied in full and that no fees will be due under either of these agreements in the future." *Id.* Gapstow (as distinguished from GPB), however, continued to request assistance from Hexagon with respect to the Gapstow Transaction as late as August 14, 2014. *Id.* And "senior representatives of GPB acknowledged Hexagon's ole and entitlement to compensation" as late as August 16, 2014. *Id.*

No. C14-04141 LB  
ORDER   4

On some unspecified date thereafter, the Gapstow Transaction closed. *Id.* GPB raised $3,000,000 of capital through it. *Id.* Hexagon believes that it is entitled, under the Agreement, to a 6% Transaction Fee based on its work on the Gapstow Transaction, so on September 12, 2014 it sued GPB in this court to recover it. *See* Original Complaint, ECF No. 1. After GPB answered it, Hexagon filed its First Amended Complaint as a matter of right. *See* FAC, ECF No. 11; *see also* Fed. R. Civ. P. 15(a)(1)(B). In it, Hexagon brings two claims for breach of contract and one claim for unjust enrichment. *See* FAC, ECF No. 11 at 5-6. GPB then filed a motion to dismiss the First Amended Complaint. *See* Motion, ECF No. 14. Hexagon filed an opposition, and GPB filed a reply. *See* Opposition, ECF No. 17; Reply, ECF No. 19. Both parties consented to the undersigned's jurisdiction over this action. *See* Consent (Hexagon), ECF No. 9; Consent (GPB), ECF No. 10.

## ANALYSIS

### I. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint must therefore provide a defendant with "fair notice" of the claims against it and the grounds for relief. *See Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (quotation and citation omitted).

A court may dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) when it does not contain enough facts to state a claim to relief that is plausible on its face. *See Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557.). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be

enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555 (internal citations and parentheticals omitted).

In considering a motion to dismiss, a court must accept all of the plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. *See id*. at 550; *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007); *Vasquez v. Los Angeles County*, 487 F.3d 1246, 1249 (9th Cir. 2007).

If the court dismisses the complaint, it should grant leave to amend even if no request to amend is made "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (quoting *Cook, Perkiss and Liehe, Inc. v. Northern California Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990)). But when a party repeatedly fails to cure deficiencies, the court may order dismissal without leave to amend. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992) (affirming dismissal with prejudice where district court had instructed *pro se* plaintiff regarding deficiencies in prior order dismissing claim with leave to amend).

## II. APPLICATION

GPB moves to dismiss each of Hexagon's three claims. The court addresses each claim in turn below.

### A. Hexagon's First Breach of Contract Claim Must Be Dismissed

In its first breach of contract claim, Hexagon alleges that the Agreement is a valid and enforceable agreement, that it performed all of its duties (including those with respect to the Gapstow Transaction) under the Agreement, that it therefore is entitled to a 6% Transaction Fee with respect to the Gapstow Transaction, that GPB breached the Agreement by not paying the Transaction Fee to it, and that it has been damaged for this reason. *See* FAC, ECF No. 11 at 5.

GPB argues that Hexagon's claim fails because the Gapstow Transaction did not occur before the Agreement terminated or within the six-month Tail Period, so the Agreement has not been breached. Based on Hexagon's allegations, the Agreement terminated on December 31, 2013, and the six-month Tail Period ended on June 30, 2014. Section 7 of the Agreement provides that this is to be the Termination Date unless it is extended by mutual agreement of the parties, and Section 13 provides that the Agreement may not be amended or modified except in writing signed by each

party.  Here, while Hexagon argues in its opposition that Hexagon and GPB extended the Agreement to cover the closing date of the Gapstow Transaction, such an allegation does not appear in the First Amended Complaint, nor has Hexagon pointed to any agreement that extends the Termination Date of Agreement.  Thus, the Agreement terminated on December 31, 2013, and the six-month Tail Period ended on June 30, 2014.

So, did the Gapstow Transaction close before June 30, 2014?  Not according to Hexagon's allegations.  Although it does not provide a specific closing date, it is clear from the chronology of Hexagon's allegations that the Gapstow Transaction was still being worked on as late as August 2014, and it was only sometime around then, or shortly thereafter, that the Gapstow Transaction closed.  Section 7 of the Agreement makes clear that, with certain exceptions not applicable here, Hexagon's and GPB's rights and obligations under the Agreement terminate at the Agreement's Termination Date and that the Tail Period lasts only for six months.  Because the Gapstow Transaction closed after this period, and in the absence of any allegations that the parties extended the Termination Date or that GPB did not use good faith efforts to close the Gapstow Transaction in a reasonably expeditious manner, GPB's obligation to pay Hexagon a Transaction Fee extinguished on June 30, 2014.  Accordingly, Hexagon's first breach of contract claim fails and must be dismissed without prejudice.  The court dismisses the claim without prejudice because the court cannot say at this time that Hexagon cannot allege that the parties agreed in writing to extend the Termination Date or that GPB intentionally or wrongfully delayed the Gapstow Transaction to frustrate Hexagon's rights under the Agreement.

**B.  Hexagon's Second Breach of Contract Claim Must Be Dismissed As Well**

In its second breach of contract claim, Hexagon alleges that the Agreement is a valid and enforceable agreement, that it performed all of its duties under the Agreement, that the parties consented to the jurisdiction of California's state and federal courts and agreed to waive the defenses of improper venue or inconvenient forum in the Agreement, that GPB breached the Agreement by asserting improper venue and inconvenient forum as affirmative defenses in GPB's answer to Hexagon's now-superseded Original Complaint, and that it has been damaged because it has incurred unnecessary costs and attorney's fees to defend against these affirmative defenses.  *See*

1  FAC, ECF No. 11 at 5.

2  The court finds that this claim fails because it is moot and Hexagon suffered no damages because
3  it never had to defend against its affirmative defenses. As explained above, GPB asserted its
4  defenses in response to Hexagon's Original Complaint, which was superseded when it chose to file a
5  First Amended Complaint as a matter of right. GPB never had to defend against GPB's affirmative
6  defenses because it immediately filed a First Amended Complaint. The court notes that Hexagon
7  does not address these points in its opposition. In these circumstances, the court finds that
8  Hexagon's second breach of contract claim fails and must be dismissed without prejudice.

### C. Hexagon's Unjust Enrichment Claim Also Must Be Dismissed

In its unjust enrichment claim, which is pled in the alternative, Hexagon alleges that it provided valuable placement and advisory services to GPB worth at least $126,000, that GPB was enriched in that amount, and that it would be inequitable to permit GPB to retain the benefit of Hexagon's services without compensating Hexagon for them. *See* FAC, ECF No. 11 at 6.

This claim also must be dismissed. As GPB points out, under New York law, a claim for unjust enrichment fails where there exists an express contract that covers the subject matter forming the basis for the unjust enrichment claim. *See IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 907 N.E.2d 268 (N.Y. 2009) ("The theory of unjust enrichment lies as a quasi-contract claim. It is an obligation imposed by equity to prevent injustice, in the absence of an actual agreement between the parties concerned. Where the parties executed a valid and enforceable written contract governing a particular subject matter, recovery on a theory of unjust enrichment for events arising out of that subject matter is ordinarily precluded.") (citing *Clark–Fitzpatrick, Inc. v. Long Is. R.R. Co.*, 516 N.E.2d 190, 193 (N.Y. 1987)) (internal citation and quotation marks omitted); *see also Georgia Malone & Co., Inc. v. Rieder*, 973 N.E.2d 743, 746 (N.Y. 2012). Here, the Agreement clearly delineates Hexagon's right to receive, and GPB's obligation to pay, a Transaction Fee. Hexagon does not dispute this point, *see* Opposition, ECF No. 17 at 7, and it also does not allege that the Agreement was procured by fraud or is invalid. Accordingly, Hexagon's unjust enrichment claim fails and must be dismissed without prejudice.

**CONCLUSION**

Based on the foregoing, the court grants GPB's motion and dismisses without prejudice Hexagon's First Amended Complaint.  Hexagon may file a Second Amended Complaint by January 27, 2015.

**IT IS SO ORDERED.**

Dated: January 13, 2015


_____
LAUREL BEELER
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
For the Northern District of California

No. C14-04141 LB
ORDER

9